**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

MARY ALICE STENNETT                                                                          PLAINTIFF

V.                                                             CIVIL ACTION NO. 1:12-CV-00079-SA-DAS

TUPELO PUBLIC SCHOOL DISTRICT                                                    DEFENDANT

**MEMORANDUM OPINION**

Plaintiff filed this action alleging discrimination in violation of the Age Discrimination in Employment Act (ADEA). Defendant has filed a Motion for Summary Judgment [44]. Upon due consideration of the motion, responses, rules, and authorities, the Court finds that Defendant's Motion for Summary Judgment is well taken and shall be GRANTED.

*Factual and Procedural Background*

Mary Alice Stennett worked for the Tupelo Public School District (School District) from 1990 to May 2010. During that time, Stennett worked in various roles at the Bissell Discipline School, Tupelo High School, and the Fillmore Center. In late May 2010, Stennett and the other Fillmore Center employees were notified that their contracts would not be renewed because the School District had decided to outsource the operation of the Center to a private company in order to save money. Stennett was 63 years old at the time of her contract non-renewal.

Stennett went on to apply for multiple jobs with the School District, seven of which are the subject of this lawsuit.[1] She was only interviewed for two positions and the School District hired other candidates for each of the jobs for which she had applied. Stennett filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on August 29,

---

[1] Plaintiff initially sought to include an eighth position, Curriculum Specialist at the Hancock Leadership Center, but concedes in her response to Defendant's motion that this position is not actionable. Plaintiff's concession is based upon Defendant's representation that the candidates selected for interviews were chosen before Plaintiff submitted her application.

2011 and received notice of her right to sue by letter dated January 27, 2012. Stennett filed this action on April 16, 2012 alleging the School District willfully refused to rehire her because of her age. The School District has moved for summary judgment.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) . However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. TIG

Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

*Analysis and Discussion*

It is unlawful under the ADEA for an employer "to fail or refuse to hire . . . any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). When bringing an ADEA claim, a plaintiff has the ultimate burden of persuasion to "prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177–78, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009).

Where, as here, a plaintiff relies only on circumstantial evidence to prove her claim, the Court utilizes the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). This burden-shifting framework requires Plaintiff to first establish a prima facie case of discrimination. Berquist v. Washington Mut. Bank, 500 F.3d 344, 349 (5th Cir. 2007). To demonstrate a prima facie case for age discrimination, Plaintiff must show "(1) [s]he belongs to a protected class; (2) [s]he applied for and was qualified for a position that was seeking applicants; (3) [s]he was rejected; and (4) following [her] rejection, another applicant not of the protected class was hired." Haas v. ADVO Sys., Inc., 168 F.3d 732, 733 (5th Cir. 1999).

If Plaintiff can make out a prima facie case, the burden of production then "shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision. If the employer articulates a legitimate, non-discriminatory reason for the employment decision, the plaintiff must then be afforded an opportunity to rebut the employer's purported explanation to show that the reason given is merely pretextual." Moss v. BMC Software, Inc., 610 F.3d 917,

922 (5th Cir. 2010) (internal citations and quotations omitted). A plaintiff may show pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" Jackson v. Cal–Western Packaging Corp., 602 F.3d 374, 378–79 (5th Cir. 2010) (quoting Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir.2003)). In an action based upon a failure to hire, "[a] showing that the [plaintiff] was 'clearly better qualified' (as opposed to merely better or as qualified) than the employees who are selected [for the position] will be sufficient to prove that the employer's proffered reasons are pretextual." Moss, 610 F.3d at 922 (citing EEOC v. La. Office of Cmty. Servs., 47 F.3d 1438, 1444 (5th Cir.1995) (internal quotations omitted)).

Defendant does not contest Plaintiff's ability to establish a prima facie case for discrimination with regard to the positions at issue in this case. Rather, Defendant asserts that Plaintiff was passed over because she was not as qualified as those individuals who were ultimately hired. Plaintiff in turn argues that she was clearly better qualified than the persons hired by Defendant. The issue before the Court then is whether Plaintiff has sufficiently established a genuine issue of material fact as to whether Defendant's legitimate, non-discriminatory reason for not hiring her was pretextual.

Plaintiff argues that she was clearly better qualified than each of the candidates ultimately hired by Defendant. "Showing that two candidates are similarly qualified does not establish pretext . . . ." Price v. Fed. Exp. Corp., 283 F.3d 715, 723 (5th Cir. 2002); see La. Office of Cmty. Servs., 47 F.3d at 1445 (rejecting claim of non-promoted employee in age discrimination case when evidence indicated at best only that she was as qualified as the selected applicants). Indeed, the Fifth Circuit has held that "the bar is set high" for plaintiffs attempting to prove they were clearly better qualified because "differences in qualifications are generally not probative

evidence of discrimination unless those disparities are 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 357 (5th Cir. 2001) (quoting Deines v. Tex. Dept. of Prot. & Regulatory Servs., 164 F.3d 277, 280-81 (5th Cir.1999)). In other words,

> the employer's judgment as to qualifications will not be probative of the issue of a discriminatory motive unless the qualifications are so widely disparate that no reasonable employer would have made the same decision. It is hardly a basis . . . to find mendacity on the part of the employer when its judgments on qualifications are somewhere within the realm of reason. There is then, for the purposes of proving pretext, a difference in simply 'second-guessing' an employer's judgment and finding proof of mendacity.

Deines, 164 F.3d at 282; see Bienkowski v. Am. Airlines, Inc., 851 F.2d 1503, 1507-08 (5th Cir. 1988) ("The ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions, nor was it intended to transform the courts into personnel managers. The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated.").

In arguing that she is clearly bettered qualified than the individuals hired by Defendant, Plaintiff claims to have higher certifications and more overall experience, including more administrative experience and more experience working for Defendant. Plaintiff had AAA certifications in English (grades 7-12) and gifted teaching (kindergarten – 12) in addition to AA certifications as an administrator and a secondary principal.[2] At the time she applied for rehire with Defendant, Plaintiff had thirty-eight years of experience as an educator. Additionally, she had twenty years of experience working for the School District. Plaintiff taught English at Gulfport High School for fifteen years and at Wingfield High School in Jackson, Mississippi for three years after that. She began working for the School District in 1990.

---

[2] Certification levels range from the lowest level, "A," to the highest level, "AAAA."

5

Plaintiff was initially hired by Defendant to work at the Bissell Discipline School, the School District's alternative school and the predecessor to the Fillmore Center. At that time, the Board of Trustees of the School District approved her as the English teacher for the Bissell School. In addition to teaching in the classroom, Plaintiff testified in her deposition that she was responsible for running the daily operations of the school. Her resume states that she was the "Director of the Bissell Center." After seven years, Plaintiff moved to Tupelo High School where she worked as a drug education specialist for three years. She then returned to the School District's alternative school, which by that time had been moved to a new location and been renamed the Fillmore Center. Again, Plaintiff's contract listed her position as a teacher and not an administrator. Unlike her experience at the Bissell School, though, she did not teach in the classroom at the Fillmore Center. Instead, Plaintiff was responsible for assisting several directors with discipline and other duties from the Center's administrative office. She remained at the Fillmore Center until her contract was non-renewed in 2010.

Plaintiff applied for a position as the Assistant Principal for the Tupelo Middle School but did not receive an interview. Defendant hired Kenneth McGaha, age 39, and claims to have chosen him because of his experience as an assistant principal at both the junior high school and high school level and because of his certification and experience in guidance counseling. Plaintiff claims that she was clearly better qualified than McGaha because he only had thirteen years of experience as an educator and had no experience with the School District. McGaha was certified at the AAA level as an administrator and as a guidance counselor, in addition to three other endorsements. Though Plaintiff argues in her memorandum brief that she had "obviously" been involved with counseling students who were disciplined at the Fillmore Center, she provides no evidentiary support for this statement. Plaintiff did not have a certification in

guidance counseling. While Plaintiff had more overall experience and more experience with the School District, the Fifth Circuit has held that "better education, work experience, and longer tenure with [a] company" do not necessarily establish that a plaintiff is clearly better qualified. Price, 283 F.3d at 723 (citing Nichols v. Lewis Grocer, 138 F.3d 563, 568-69 (5th Cir.1998)); see also Churchill v. Tex. Dep't of Crim. Justice, 2013 WL 4406706, *6 (5th Cir. Aug. 19, 2013) ("Demonstrating that one is 'clearly better qualified' is understandably very difficult to meet so as to avoid judicial second-guessing of business decisions . . . ."). The Court finds that Plaintiff has failed to meet her burden of establishing that she was clearly better qualified than McGaha.

Similarly, Plaintiff claims her superior certifications and greater experience make her clearly better qualified than Tyrone Catledge, age 30, who was hired for the Assistant Principal position at Lawndale Elementary School. Catledge had only AA certifications and seven years of experience, all with the School District. Even so, Defendant cites to the deposition testimony of Brock English, the principal at Lawndale Elementary at the time and the person who hired Catledge. English states that he chose Catledge because his certification and background in STEM (Science, Technology, Engineering, and Math) education and certification in business and computer technology would complement his own background in English. Plaintiff's certifications, on the other hand, were for English, gifted teaching, administration, and as a secondary school principal.[3] These certifications may be evidence that Plaintiff was qualified for the position, but they do not establish that she was clearly better qualified than Catledge as it cannot be said that English's choice was outside the "realm of reason." Deines, 164 F.3d at 282.

Plaintiff also applied for the position of Administrative Intern at Lawhon Elementary School but was not interviewed. Instead, Defendant hired Ian Shumpert, age 45, who had ten years of teaching experience at the time, all with the School District. Shumpert held AA

---

[3] Catledge also received a certification as an entry-level administrator less than three months after his hire date.

7

certifications for elementary education and as a non-practicing administrator.[4] Again, Plaintiff claims her higher level certifications and greater experience make her clearly better qualified. Defendant, though, contends it hired Shumpert because he had experience at the elementary school level and had previously worked at Milam, the school that students would be attending upon leaving Lawhon. Defendant cites the deposition testimony of Christy Carroll, the principal at Lawhon Elementary who hired Shumpert, who states that she hired Shumpert because of his familiarity with the curriculum Lawhon students would encounter at Milam, which she believed would increase student achievement. Plaintiff had never worked at Milam nor had she ever worked in an elementary school. Thus, even considering her superior level of certifications and greater amount of experience generally, the Court finds Plaintiff was not clearly better qualified for the Lawhon administrative position.

Plaintiff applied but was not interviewed for the Lead Teacher position at the High School Advancement Academy (HSAA). The HSAA is an alternative program for students who have fallen two years behind academically. Defendant hired Ahsaki Games, age 35. Games had a certification at the AA level in mathematics (grades 7-12) and had thirteen years of teaching experience, two of which were with the School District. Plaintiff argues that she was clearly better qualified because of her greater overall experience and higher level certifications. Additionally, Plaintiff claims to have been hired as the Lead Teacher for the Bissell School in 1990. In her deposition, Plaintiff testified that her job title was Lead Teacher or teacher throughout the seven years she worked at the Bissell School and that she was in charge of the day-to-day operations of the school in addition to teaching English in the classroom.

---

[4] Jason Harris, Tupelo High School principal, testified in his deposition that administrator endorsements are designated as "non-practicing," "entry level," and "career level" with each classification indicating an increased level of experience. Plaintiff's certifications as an administrator and secondary principal were both classified as "non-practicing."

8

Defendant cites the affidavit of Larry Harmon, the director of one of the School District's alternative programs and one of the persons who recommended Games for the position. Harmon states that he supported Games for the Lead Teacher position because it involved teaching math in the classroom, and Games not only had that certification but was also working as a math teacher for Tupelo High School at the time. Plaintiff has not taught in the classroom since 1997.[5] She is not certified in mathematics and has no experience teaching mathematics. Though her experience at the Bissell School is evidence that Plaintiff was qualified for a lead teacher position, it does not establish that she was clearly better qualified than Games to be the Lead Teacher at the HSAA.

Plaintiff applied for the Assistant Principal position at Tupelo High School and was interviewed. Though Plaintiff contests Defendant's decision not to hire her, she concedes that Dr. Tanisha Westerfield-Smith, age 37 and the person hired by Defendant, was qualified for the position. In fact, in her deposition, Plaintiff fails to articulate any reason why she was more qualified than Dr. Westerfield-Smith.[6] Defendant claims to have hired Dr. Westerfield-Smith because she had completed her doctorate in Curriculum and Instruction, had previously worked in the School District's Department of Curriculum and Instruction, and would be able to help teachers improve student performance because of her in-depth knowledge. Plaintiff had not earned a doctorate and does not claim to have any specialized knowledge or experience in curriculum or instruction. Instead, she again relies upon her greater years of experience as an

---

[5] The Court notes that Plaintiff contradicts her own deposition testimony by stating in her memorandum brief that she did not teach in the classroom for her entire twenty-year career with the School District.

[6] Q: "Why do you believe you're a better qualified candidate than Dr. Westerfield-Smith?"
A: "I back out on that one. I'm not so sure I was, to be honest with you now. I don't know. I don't know Dr. Westerfield-Smith."
Q: "Well, let me ask it this way, Ms. Stennett. Do you believe age played a role in that decision to hire Dr. Westerfield-Smith?"
A: "I could not answer that. I would have to know the age of Dr. Westerfield. But I know in education, if you've received a doctorate in education, then you are very qualified, I'm assuming."

9

educator and administrator and greater years of experience with the School District. The Court finds such differences in years of experience alone do not establish that she was clearly better qualified. Price, 283 F.3d at 723.

Plaintiff was also interviewed for the Testing Coordinator position at Tupelo High School. Defendant ultimately hired Talina Knight, age 39. Knight had fifteen years of teaching experience with the School District and held a AA certification in English (grades 7-12).[7] Defendant cites the deposition of Jason Harris, the principal at Tupelo High School, who testified that he chose Knight after her interview because she was very knowledgeable about the systems and data involved and understood how to communicate with teachers to improve student performance based upon that information. In particular, Harris testified that he was looking for someone who could go beyond simply disseminating information and who could disaggregate the testing data to improve instruction in the classroom. Plaintiff argues that Knight's only prior experience was as a teacher and that she had had no experience conducting tests, whereas Plaintiff claims in her memorandum brief that she had worked as the testing coordinator for the Fillmore Center.

Plaintiff fails to cite any evidence that she had in fact been a testing coordinator for the School District. "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998) (internal citations omitted).[8] "The court need consider

---

[7] Knight's hire date was August 1, 2011 and her English certification was issued August 16, 2011. She also received her certification as a non-practicing administrator October 24, 2011.
[8] "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: citing to particular parts of materials in the record. . . . or showing that the materials cited do not establish the absence or presence of a

10

only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(C)(3).

Plaintiff's resume states that she was the Fillmore Center's "on-site test coordinator / assistant test coordinator for all district / state tests in grades 3-12." She testified in her deposition that as the alternative school test coordinator she was "responsible for all the testing, the monitors, getting the tests there, securing them, getting them back to the different schools." However, Plaintiff offers no evidence that she conducted the type of data disaggregation that Harris testified the Tupelo High School testing coordinator job would require. Plaintiff also testified that she acted as the test coordinator only until Defendant hired a certified counselor for the Center who then took over the testing responsibilities.

Further, Plaintiff testified that she had had no training or certification that would have prepared her for such a position and that she found the responsibility to be a "very difficult task." The Fillmore Center was a small program with a student population that required less than twenty certified employees. Tupelo High School has over two thousand students. Even with her experience coordinating testing at the Fillmore Center, Plaintiff has failed to show "that no reasonable person, in the exercise of impartial judgment, could have chosen" Knight over Plaintiff. Celestine, 266 F.3d at 357. Therefore, Plaintiff has failed to show that she was clearly better qualified.

Plaintiff applied for another testing coordinator position, the District Testing Coordinator at the Central Office, but was not interviewed. Defendant hired Lea Johnson, age 43, who had nineteen years of teaching experience and six years of experience with the School District. Johnson was certified at the AA level for mathematics (grades 7-12), gifted (kindergarten – 12),

---

genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A-B).

11

computer discovery (grades 7-12), and as a career level administrator. As with the Testing Coordinator position at Tupelo High School, Plaintiff points to her experience as the testing coordinator for the Fillmore Center without offering any supporting evidence or citation to the record.

Defendant, however, cites to the affidavit of David Meadows, the Interim Superintendent for the School District at the time and the person who recommended Johnson for hire. In his affidavit, Meadows states that Johnson had experience coordinating tests as a part of her work as Assistant Principal at Tupelo High School. He also claims to have recommended Johnson on the basis that her math certification would be valuable in improving math testing scores, which were an area of concern. As previously stated, Plaintiff did not have a certification in mathematics. As with each of the other contested positions, Plaintiff's certifications and experience may establish that she was qualified for the position but do not show that she was clearly better qualified. As such, the Court finds Plaintiff has failed to meet her burden of establishing a genuine issue of material fact as to whether Defendant's proffered reason for failing to hire her is merely pretext.

Additionally, the Court finds Plaintiff has failed to meet her burden regarding pretext by any other theory. Plaintiff makes much of Defendant's failure to select her for an interview for five of the seven positions at issue. However, the Court finds this argument unavailing, as Plaintiff has offered no evidence that she was more qualified than or even as qualified as the other applicants who were chosen for interviews. Plaintiff also contends that Defendant's proffered reasons are based upon qualifications that were not listed in the job posting. However, in interpreting their holding in Price, a Fifth Circuit panel explained that "an employer has a right

to depart from published job requirements and to value certain attributes over others." Thomas v. Trico Products Corp., 256 F. App'x 658, 662 (5th Cir. 2007).

Plaintiff next argues that Defendant's proffered reasons for failing to hire her are pretextual because they are subjective. However, "[a]n employer's subjective reason for not selecting a candidate. . . . may serve as a legitimate, nondiscriminatory reason for the candidate's non-selection." Alvarado v. Tex. Rangers, 492 F.3d 605, 616 (5th Cir. 2007); Patrick v. Ridge, 394 F.3d 311, 317 (5th Cir. 2004) (recognizing that the McDonnell Douglas framework "does not mean that an employer may not rely on subjective reasons for its personnel decisions"). Further, "[t]he mere fact that an employer uses subjective criteria is not. . . . sufficient evidence of pretext." Manning v. Chevron Chem. Co., LLC, 332 F.3d 874, 882 (5th Cir. 2003) (citing with approval Millbrook v. IBP, Inc., 280 F.3d 1169, 1176 (7th Cir.2002) ( "[a]bsent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext under Title VII")). As such, the Court finds Plaintiff's argument is without merit and does not establish a genuine issue of material fact as to pretext.

Finally, Plaintiff asks the Court to "look to the big picture" and consider that the four oldest former employees at the Fillmore Center were not rehired on a full-time basis. Plaintiff cites as evidence to support this claim a document that is redacted and does not include the age or date of birth of any of the former Fillmore Center employees. In its reply memorandum, Defendant directs the Court's attention to a document, attached as an exhibit to a deposition, that does include the relevant dates of birth. According to this document, Defendant rehired seven individuals for full-time positions aged 36, 34, 55, 51, 34, 49, and 28.[9] Defendants did not rehire

---

[9] Defendant rehired an eighth individual, age 60, on a part-time basis. This individual has also filed a lawsuit against Defendant alleging age discrimination, and Plaintiff urges the Court to consider this as evidence of pretext.

ten individuals aged 34, 40, 25, 37, 48, 59, 25, 64, 60, and 41. Plaintiff cites no authority for the proposition that such a range of ages of individuals rehired and not rehired by Defendant may establish pretext, and as such, the Court declines to find so in this case.

*Conclusion*

For the foregoing reasons, the Court finds Plaintiff has failed to establish a genuine issue of material fact as to whether Defendant's legitimate, non-discriminatory reasons for failing to hire her were merely pretextual. Therefore, Defendant's Motion for Summary Judgment [44] is GRANTED. A separate order to that effect shall issue this day.

SO ORDERED on this, the 1st day of October, 2013.

  /s/ Sharion Aycock
**UNITED STATES DISTRICT JUDGE**

---

Whereas Plaintiff applied for different positions and had different certifications and experience, the Court finds this second lawsuit to be irrelevant to the instant action.